IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STEVEN K. TOPLETZ, | § § § | |
| Petitioner, | § § | |
| v. | § § § | 4:19-CV-820-RWS-KPJ |
| JIM SKINNER, | § § § | |
| Respondent. | § § § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Petitioner Steven K. Topletz's ("Petitioner") Motion for Preliminary Injunction (the "Motion") (Dkt. 3). Petitioner filed the above-numbered petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") (Dkt. 1). The Petition was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636. For the reasons explained below, the Court recommends Petitioner's Motion (Dkt. 3) be **DENIED**.

### I.   BACKGROUND

#### A.   UNDERLYING STATE COURT JUDGMENT

The Petition arises out of post-judgment discovery proceedings in a case pending in the 416th Judicial District Court in Collin County, Texas (the "Collin County Court"), Trial Court Cause No. 416-04120-2012. *See* Dkt. 1. Judgment in the underlying suit was entered against Petitioner on August 10, 2015. *See* Dkt. 1-9 at 3. The plaintiff in the underlying case served Petitioner with post-judgment discovery on August 1, 2016. *See id*. As part of this discovery, the plaintiff sought financial information relating to the Steven K. Topletz 2011 Family Trust (the

"Trust"), as Petitioner is the primary beneficiary. *See* Dkt. 1-9. Petitioner's brother, sister, and cousin are trustees of the Trust. *See* Dkt. 1-17 at 68–69. Paragraph 4.12 of the Trust's formation document (the "Trust Formation Document") states:

> Each beneficiary who has attained the age of twenty-five years shall have free access to those books, records and accounts at all reasonable times during regular business hours. If such beneficiary requests, a profit and loss statement, fully disclosing the fiscal operations of the trust for the preceding year, and a balance sheet, which accurately reflects the financial status of the trust at the expiration of the preceding year, shall be furnished to such beneficiary within ninety days of the end of the fiscal year. Any beneficiary who has attained the age of twenty-five years may cause the books, records and accounts of any trust in which the beneficiary has a beneficial interest to be audited at any time.

("Paragraph 4.12"). Dkt. 1-2 at 4.

On October 3, 2016, the plaintiff in the underlying case filed a motion to compel Petitioner to respond to the discovery requests, as Petitioner failed to respond in a timely manner. *See* Dkt. 1-9 at 4. Petitioner requested more time to respond to the discovery, and Petitioner responded to the discovery requests on or about November 29, 2016. *See id.* On January 20, 2017, the plaintiff requested that Petitioner remove all objections and produce all missing documents responsive to the discovery requests. *See id*. The plaintiff then filed an amended motion to compel on March 22, 2017, as Petitioner produced some, but not all, of the outstanding responsive documents. *See* Dkt. 1-10 at 2. A hearing was set with the Collin County Court on the amended motion to compel to be held on April 11, 2017, but the hearing was cancelled as the plaintiff passed away the day before the hearing. *See* Dkt. 1-9 at 5. After the plaintiff's estate was probated, the plaintiff's estate filed a second amended motion to compel six categories of financial documents pertaining to the Trust (the "Trust Documents") on May 8, 2018. *See* Dkt. 1-9. A hearing was held in the Collin County Court on the second amended motion to compel on June 25, 2018 (the "Motion to Compel Hearing"). *See* Dkt. 1-11. According to an email presented during the Motion to Compel Hearing,

2

Petitioner's prior counsel agreed to produce the Trust Documents subject to the entry of a protective order (the "Email").[1] *See* Dkt. 1-11 at 8–12. During the Motion to Compel Hearing, the parties discussed off the record whether Petitioner's counsel would produce the Trust Documents, and in a later hearing, the Collin County Court represented that Petitioner's counsel agreed to produce the Trust Documents during this conversation. See Dkts. 1-11 at 13; 1-17 at 35. After the Motion to Compel Hearing, the Collin County Court entered an order on June 27, 2018, compelling Petitioner to produce the Trust Documents and to pay the plaintiff's attorney $1,000, in attorney's fees. *See* Dkt. 1-12.

On July 10, 2018, Petitioner sent a letter to the representative of one of the three trustees of the Trust requesting the Trust Documents.[2] *See* Dkt. 1-13. The trustee denied Petitioner's request, stating the Trust Formation Document did "not entitle any beneficiary to duplicate, convert, or otherwise receive possession of any such information." Dkt. 1-14. Petitioner produced the trustee's letter denying his request to the plaintiff's counsel and certified to the Collin County Court that he had produced all responsive documents in his possession, custody, and control. *See* Dkt. 1-15.

On December 6, 2018, the plaintiff filed a motion for contempt and other sanctions against Petitioner for his failure to produce the Trust Documents and to pay the $1,000, in attorney's fees as ordered by the Collin County Court. *See* Dkt. 1-16. The plaintiff argued that Paragraph 4.12 of the Trust allows Petitioner access to the Trust Documents, and thus, Petitioner had the ability to produce them. *See id.* at 5. On February 26, 2019, the Collin County Court held a hearing off the

---

[1] Petitioner argues the Email merely shows an agreement to produce the Trust Formation Document and Petitioner's individual tax returns, which have been produced.

[2] Petitioner also sent a similar letter to another one of the trustees on July 2, 2018; however, no response is included in the record before the Court. *See* Dkt. 3-4 at 99.

3

record to address the plaintiff's motion for contempt. *See* Dkt. 1-20 at 15. Following the hearing, the Collin County Court entered an order on February 28, 2019, requiring Petitioner to pay $3,500, in attorney's fees and to produce the Trust Documents by March 11, 2019, or be held in contempt. *See* Dkt. 1-18 at 4.

On March 18, 2019, the Collin County Court held a hearing on the record regarding the plaintiff's motion for contempt and sanctions (the "Contempt Hearing"). *See* Dkt. 1-17. At the Contempt Hearing, the plaintiff's counsel presented the Email from Petitioner's previous counsel which states:

> As I have said, we will produce the tax returns and the Steven Topletz 2011 Family Trust subject to the protective order which I have previously signed and sent to you for entry by the Court when you send me a signed copy of the protective order. I also require an Order from the Court ordering the production of the trust document subject to the protective order so we eliminate the issue of [Petitioner] being required to breach a contractual agreement without an order of the Court.
>
> I think this could be included in an order on your amended Motion to Compel granting it as to document production, production of the trust subject to the protective order and denying your request (or withdrawing your request) for sanctions.
>
> We can provide you with an affidavit from [Petitioner] stating that he has produced all documents requested that were in his possession or to which he had access or you can send additional interrogatories to inquire. Either way, I would like to put some finality to document production.

Dkt. 1-17 at 78. During the Contempt Hearing, the Collin County Court further emphasized that Petitioner's former counsel previously made a representation directly to the Collin County Court that he would produce the Trust Documents. *See id*. at 35. At the conclusion of the Contempt Hearing, the Collin County Court found Petitioner in contempt for failing to produce the Trust Documents as compelled by the Court, and hence, ordered that Petitioner be taken into custody. *See id*. at 71–72.

The commitment order signed by the Collin County Court required Petitioner to remain in

4

jail until Petitioner produced to the plaintiff's counsel "full and/or proper responses and/or documentation" of the Trust Documents. Dkt. 1-3. The Collin County Court issued a contempt judgment (the "Contempt Judgment"), finding that according to Paragraph 4.12 of the Trust, and pursuant to Petitioner's prior counsel's agreement, Petitioner could have obtained the Trust Documents and was in contempt for failing to do so. *See* Dkt. 1-2 at 4–5.

After the Contempt Hearing, Petitioner filed a petition for writ of habeas corpus with the Dallas Fifth Court of Appeals (the "State Petition"). *See* Dkt. 1-4 at 2–3. On March 19, 2019, the Fifth Court of Appeals granted Petitioner's request for temporary relief and allowed Petitioner to be released from custody pending the determination of the State Petition. *See* Dkt. 3-5. In the State Petition, Petitioner argued the Contempt Judgment was void due to Petitioner's inability to produce the Trust Documents. *See id.* at 14–15. On September 11, 2019, the Fifth Court of Appeals issued an opinion denying Petitioner's State Petition and finding that Petitioner had "constructive possession" of the Trust Documents, and thus, could produce the Trust Documents. *See* Dkt. 1-18. On September 20, 2019, the Fifth Court of Appeals denied Petitioner's motion for rehearing on Petitioner's State Petition. *See* Dkt. 1-21. On October 11, 2019, the Supreme Court of Texas summarily denied Petitioner's second petition for writ of habeas corpus. *See* Dkt. 1-22. Petitioner has remained out of custody since March 19, 2019. *See* Dkt. 1.

The Collin County Court issued a capias for Petitioner's arrest on September 12, 2019, and an amended capias on October 8, 2019 (the "Amended Capias"). *See* Dkts. 1-23, 1-7. On December 5, 2019, the Collin County Court issued a new commitment order, requiring any sheriff or constable of the State of Texas to confine Petitioner for fourteen (14) days or "until he has been found by [the Collin County Court] to have purged himself of the contempt by producing the documents previously ordered" (the "Commitment Order"). Dkt. 19-1. The Commitment Order

5

and Amended Capias would still be active if this Court had not entered the Temporary Restraining Order on December 5, 2019 (Dkt. 15).

## B. PROCEDURAL HISTORY

Petitioner filed the Petition on November 12, 2019. *See* Dkt. 1. On November 19, 2019, Petitioner filed the Motion for Temporary Restraining Order and Preliminary Injunction. *See* Dkt. 3. On November 25, 2019, the Court held a hearing to address whether the Court had jurisdiction to decide the Petition (the "Jurisdiction Hearing"). *See* Dkt. 5. After requesting leave to file additional briefing at the Jurisdiction Hearing, Petitioner filed a Supplemental Brief in Support of the Motion (Dkt. 6) to specifically address the question of the Court's jurisdiction. The Court then ordered Respondent Jim Skinner ("Respondent") to file briefing addressing its position regarding the Court's jurisdiction to hear the Petition. *See* Dkt. 7. Respondent filed a brief with the Court on December 3, 2019 (Dkt. 9). On December 5, 2019, the Court held a hearing regarding Petitioner's Motion for Temporary Restraining Order (the "TRO Hearing"). *See* Dkt. 13. During the TRO Hearing, both parties expressed agreement as to the Court's jurisdiction. Respondent stated that while he was unopposed to the issuance of a temporary restraining order, he was opposed to the issuance of a preliminary injunction. *See id.*

The Court being satisfied that it has jurisdiction to decide the Petition, and the parties having agreed to the issuance of a temporary restraining order, granted Petitioner's Motion for Temporary Restraining Order on December 5, 2019. *See* Dkt. 15. Pursuant to the Court's order (Dkt. 18), Respondent filed a response to the Petition (Dkt. 19) and a response to the Motion (Dkt. 20). On December 16, 2019, the Court held a hearing on the Motion (the "Preliminary Injunction Hearing"). *See* Dkt. 21. On December 18, 2019, with the agreement of the parties, the Court extended the Temporary Restraining Order to remain in effect until December 30, 2019, at 6:00

p.m. *See* Dkt. 21. On December 30, 2019, with the agreement of the parties, the Court extended the Temporary Restraining Order to remain in effect until January 6, 2020, at 6:00 p.m. *See* Dkt. 23.

## II. LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted." *Gonannies, Inc. v. GoAuPair.com, Inc.*, 464 F. Supp. 2d 603, 607 (N.D. Tex. 2006) (citing *Mississippi Power and Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)). Thus, "if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction." *Id*. "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## III. ANALYSIS

Petitioner argues he is entitled to injunctive relief because he has demonstrated that each

requirement weighs strongly in his favor. *See* Dkt. 3. While Respondent does not dispute that the second and third elements required for injunctive relief are met, Respondent argues that Petitioner has not demonstrated a substantial likelihood of success on the merits and that the issuance of a preliminary injunction would serve the public interest. *See* Dkt. 20. The Court agrees with Respondent. Because Petitioner has not demonstrated a substantial likelihood of success on the merits or a valid public interest factor, the Court recommends the Motion be **DENIED**.

### A. SUBSTANTIAL LIKELIHOOD OF SUCCESS

Petitioner argues he has demonstrated a substantial likelihood of success in proving that the Contempt Judgment is constitutionally deficient in three separate arguments: (1) Petitioner does not have the ability to purge himself of contempt; (2) the Collin County Court relied on insufficient evidence to reach its conclusion in the Contempt Judgment; and (3) the Collin County Court did not make its finding of contempt by clear and convincing evidence. *See* Dkt. 3. Respondent asserts that Petitioner cannot show complete inability to comply and the Collin County Court record shows the Contempt Judgment rests on sufficient evidence. *See* Dkt. 19.

"To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). To be entitled to a writ of habeas corpus, Petitioner must prove that the underlying contempt judgment is void. *See Johnson v. Zerbst*, 304 U.S. 458, 468 (1938); *Ex parte Hefner*, 599 F.Supp. 95, 100 (E.D. Tex. 1984) ("A habeas corpus proceeding is a collateral attack on a judgment of contempt, and one may be relieved of its impositions only if the judgment is void."). An underlying contempt judgment is void if it was "beyond the court's power to enter the judgment, or if the judgment deprived the relator of liberty without due process." *Orr v. Bowles*, 2002 WL 1033092, at *3 (N.D. Tex. May 20, 2002).

A petitioner in a habeas corpus proceeding must establish that the judgment of a state court either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In a habeas corpus proceeding pursuant to the judgment of a state court, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The burden of proof is on the petitioner in a habeas corpus proceeding." *Jones v. Estelle*, 632 F.2d 490, 491 (5th Cir. 1980).

### 1. Ability to Purge Contempt

Petitioner argues he does not have actual possession of the Trust Documents, and hence, cannot produce them to purge himself of contempt. *See* Dkt. 3. In response, Respondent argues the Contempt Judgment allows Petitioner to purge himself of contempt by producing "*full and/or proper responses* and/*or* documentation" to the Trust Documents, and therefore Petitioner has the ability to purge himself of contempt. *See* Dkt. 19 (emphasis added).

Under Supreme Court precedent, "punishment may not be imposed in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 638 (1988). "In a civil contempt proceeding such as this, of course, a defendant may assert a *present* inability to comply with the order in question." *U.S. v. Rylander*, 460 U.S. 752, 757 (1983) (emphasis in original). In raising such a defense, "the defendant has a burden of production," as well as the burden of persuasion. *Id.*; *Maggio v. Zeitz*, 333 U.S. 56, 75–76 (1948).

The Collin County Court and the Fifth Court of Appeals both found that Petitioner had constructive possession of the Trust Documents, and thus, had the ability to produce the Trust

Documents. *See* Dkt. 1-2. Moreover, both the Collin County Court and the Fifth Court of Appeals found Petitioner had the ability to produce the Trust Documents pursuant to Petitioner's prior counsel's agreement. *See* Dkt. 1-18. Further, after an *in camera* review of the Trust Formation Document, the Collin County Court found "no restriction in the Trust prevents [Petitioner] from obtaining possession of or copying documents and that such financial documents were freely available to him per the Trust agreement." Dkt. 1-2. In its Contempt Judgment, the Collin County Court states that Petitioner can fully purge himself of contempt by producing "*full and/or proper responses* [to] and/*or* documentation [of]" the Trust Documents. Dkt. 1-2 (emphasis added). Therefore, the Collin County Court's Contempt Judgment allows Petitioner to purge himself of contempt through means other than just producing the Trust Documents themselves, such as providing evidence of a genuine effort made to obtain the Trust Documents, filing suit against the Trust, or providing information obtained by Petitioner's review of the Trust Documents. In the Petition and the Motion, Petitioner merely argues that he cannot purge himself of contempt because one of the trustees refused to give him the Trust Documents,³ and does not address whether he could purge himself of contempt through producing a "proper response." *See* Dkts. 1, 3. As Petitioner has provided the Court with no evidence that the Collin County Court erred in concluding the Trust Formation Document contains no restrictions on copying or possessing financial documents by the primary beneficiary of the Trust, and Petitioner has also not provided the Court with evidence that he has the inability to produce "full and/or proper responses" to the

---

³ While the Trustee did not agree to give Petitioner the Trust Documents, the Court notes that the Trustee's letter states:
> However, in the event [Petitioner] wishes to receive a profit and loss statement or balance sheet that reflects the [Trust's] operations as of December 31, 2017, you may submit a proper request for this information. Upon receipt of such a request from your client as a beneficiary of the [Trust], [Petitioner] would be permitted to receive this information on or before September 30, 2018.

Dkt. 1-14. At the Contempt Hearing, Petitioner testified that he had not sought a profit or loss statement or balance sheet for the Trust. *See* Dkt. 1-17 at 54.

10

compulsion of the Trust Documents, the Court finds Petitioner has not demonstrated a substantial likelihood of success on the merits on this ground.

### 2. Sufficiency of the Evidence

Second, Petitioner argues the Collin County Court only relied on Paragraph 4.12 of the Trust in deciding that Petitioner should be held in contempt, which does not support a finding that Petitioner possessed or had the ability to produce the Trust Documents. *See* Dkt. 3. Respondent asserts Petitioner was afforded due process and was allowed to present his evidence at the Contempt Hearing. *See* Dkt. 19.

In the Contempt Judgment, the Collin County Court found that "no restriction in the Trust [Formation Document] prevents [Petitioner] from obtaining possession of or copying documents and that such financial documents were freely available to him per the Trust agreement." Dkt. 1-2. The Collin County Court further found that Petitioner had "previously agreed to produce tax returns subject to a protective order between the parties and an order by [the Collin County Court] for the Trust." *Id*. In a habeas corpus proceeding pursuant to a judgment entered by a state court, "a determination of a factual issue made by a State court shall be presumed to be correct," and it is the petitioner's burden "of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). While Petitioner argues "not one scintilla of evidence adduced" shows Petitioner could obtain the Trust Documents, the Court finds that the Collin County Court relied not only on the text of Paragraph 4.12, but also on the representations made by Petitioner's prior counsel that he would produce the Trust Documents. *See* Dkt. 1-2. Without more, Petitioner's statement that "no rational trier of fact could find [Petitioner] guilty of contempt" is merely conclusory and does not meet Petitioner's burden of rebutting the presumption that the Collin County Court's findings were correct. *See* 28 U.S.C. § 2254(e)(1). Therefore, the Court finds

11

Petitioner has not established a substantial likelihood of success on the merits on this ground.

### 3. Findings by Clear and Convincing Evidence

Lastly, Petitioner contends the Contempt Judgment is unconstitutional and void because the Collin County Court did not specifically find Petitioner guilty of contempt by clear and convincing evidence. *See* Dkt. 3. Respondent argues the Court should presume the Collin County Court's determination of a fact issue is correct. *See* Dkt. 19.

"In a civil contempt action the proof of the defendant's contempt must be 'clear and convincing.'" *U.S. v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976) (citations omitted). In the contempt context, sufficiently clear and convincing evidence "produces in the mind of the trier of fact a firm belief or conviction . . . so clear, direct and weighty and as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case." *Hornbeck Offshore Servs. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (internal quotations omitted). As stated by the Fifth Circuit, "it is appropriate to reconstruct the trial court's findings by reviewing the record in the light of the court's opinion where the record of the state court is orderly and intelligible," when the state court fails to specify which legal standard it used. *Reddix v. Thigpen*, 805 F.2d 506, 513 (5th Cir. 1986) (citing *Guice v. Fortenberry*, 661 F.2d 496, 506 (5th Cir. 1981)). When the statement of law is clear and the presentation is made in an orderly and coherent fashion, the court can assume the state court applied the proper standard. *See Guice*, 661 F.2d at 506.

Here, the Collin County Court record is orderly, and the Contempt Judgment plainly describes the facts and Texas law on which it relied in finding Petitioner in contempt of court. *See* Dkt. 1-2. In his Motion, Petitioner merely concludes that the Collin County Court did not find him guilty of contempt by clear and convincing evidence without analyzing whether the evidence presented could support a finding of contempt by such standard. *See* Dkt. 3. As it is Petitioner's

burden to prove that the Contempt Judgment is not supported by clear and convincing evidence, and the Court can presume the Collin County Court applied the proper standard, the Court finds Petitioner has not rebutted that presumption. Therefore, the Court finds Petitioner has not demonstrated a substantial likelihood of success on the merits.

### B.   SUBSTANTIAL THREAT OF IRREPARABLE HARM

Petitioner argues he has shown that he is likely to suffer irreparable harm in the absence of preliminary relief because the Amended Capias and Commitment Order remain active for his arrest. *See* Dkt. 3. In his response, Respondent conceded incarceration of a person in violation of the Constitution is indeed irreparable harm, but argued that the Collin County Court properly exercised its authority in issuing the Contempt Judgment. *See* Dkt. 20. The Court finds Petitioner has demonstrated that in the absence of the requested injunctive relief, Petitioner could be arrested and imprisoned. *See Burdine v. Johnson*, 87 F. Supp. 2d 711, 717 (S.D. Tex. 2000) (finding a petitioner "suffers irreparable harm each day that he is imprisoned").

### C.   WEIGHT OF INJURIES

Petitioner argues no harm would occur if the Court issued a preliminary injunction because he is not currently in jail and an injunction would merely preserve the status quo. *See* Dkt. 3. In response, Respondent agrees that a preliminary injunction prohibiting Respondent from accepting custody of Petitioner would not cause Respondent any substantial harm. *See* Dkt. 20. The Court finds greater injury will be inflicted upon Petitioner by denial of injunctive relief than would be inflicted upon Respondent by granting such relief.

### D.   THE PUBLIC INTEREST

Petitioner argues a preliminary injunction will serve the public interest because the public has an interest in guaranteeing innocent people freedom from unjust punishment. *See* Dkt. 3.

Respondent argues "no federal law, right, or interest is at stake," so the public has an interest in ensuring a state court judgment dealing with state court issues is not upset by a federal court. *See* Dkt. 20. The Court recognizes that "there is a strong public interest to ensure that people are not unjustly punished." *National Football League Players Association on behalf of Elliott v. National Football League*, 2017 WL 4124105, at *6 (E.D. Tex. Sept. 18, 2017). As stated above, the Court finds that without injunctive relief, Petitioner faces the potential of being incarcerated, and a habeas corpus proceeding is the exclusive remedy for a prisoner to seek immediate release from custody. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). Thus, there is a federal interest at stake. However, as explained above, Petitioner has failed to show a substantial likelihood of success on the merits.

Moreover, the Court finds that the public has an interest in ensuring that judgment creditors have the ability to discover financial information from the judgment debtor relating to assets potentially available to satisfy the judgment. *See F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995); *Candid Advice, Inc., Pension Plan & Trust v. Lasseter*, 2005 WL 8164466, at *1 (S.D. Tex. June 7, 2005). Because the Court finds the public interest weighs against the issuance of injunctive relief, the Court finds Petitioner has not met his burden as to the public interest factor.

### IV.    CONCLUSION

"A preliminary injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). Based on the foregoing, the Court finds Petitioner has not demonstrated a substantial likelihood of success on the merits or a valid public interest factor. Accordingly, the Court recommends that Petitioner's Motion for Preliminary Injunction (Dkt. 3) be **DENIED**. However, with the agreement of the parties, the Temporary Restraining Order (Dkt. 15) shall remain in place until **Monday, January 27, 2020, at 6:00 p.m.**

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The parties are directed to Local Rule CV-72(c) for page limitations on objections.

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 6th day of January, 2020.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE